IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                                                    Criminal No. 19-256

JACK BRIAN LAFORTE

**UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

The United States of America, through undersigned counsel, hereby submits its Response in Opposition to Defendant Jack Brian Laforte's Motion pursuant to 18 U.S.C. § 3582(c)(1)(A) for Compassionate Release.  (Doc. No. 63).  The Court should reject the defendant's motion because he cannot establish the existence of "extraordinary and compelling reasons" for a sentencing reduction, and in any event, the applicable § 3553(a) factors justify the defendant's current sentence—just as they did when this Court sentenced defendant to 78 months' imprisonment less than one year ago.

## BACKGROUND

On August 20, 2019, a federal grand jury charged defendant Jack Brian Laforte with a one-count indictment for Possession of Material Depicting the Sexual Exploitation of a Minor, on or about June 14, 2019, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)92).  On October 28, 2019, the defendant pleaded guilty pursuant to a plea agreement, which was detailed on the record at the hearing.   Per his plea agreement, the defendant stipulated that the following sentencing enhancements are applicable based upon the facts and evidence supporting the charge:

      a.     that the base offense level should be raised by two (2) levels pursuant to § 2G2.2(b)(2) because the material involved a prepubescent minor or minor who had not attained the age of 12 years;

      b.     that the base offense level should be raised by two (2) levels pursuant to § 2G2.2(b)(3)(F) because the defendant knowingly engaged in distribution;

      c.     that the base offense level should be raised by four (4) levels pursuant to § 2G2.2(b)(4) because the material depicted sadistic or masochistic conduct;

      d.     that the base offense level should be raised by two (2) levels pursuant to § 2G2.2(b)(6) because a computer was used to commit the offense;

      e.     that the base offense level should be raised by five (5) levels pursuant to § 2G2.2(b)(7)(D) because the material, comprised of videos, constitutes at least 600 images for sentencing purposes.

As this Court is aware, the Department of Homeland Security Investigations (HSI) began investigating the defendant for violations of online child exploitation offenses after receiving information about an individual who had uploaded an image depicting a minor engaged in sexually explicit conduct.  Agents were able to trace the upload of this child sexual abuse material (i.e., child pornography) by IP address to the defendant's residence in Monessen, Pennsylvania.  Upon executing a search warrant at the defendant's residence in June 2019, Agents seized a laptop computer from the defendant that contained material, namely videos, of minors engaging in the lewd and lascivious display of their genitals, as well as engaged in sexually explicit conduct.  The child sexual abuse material recovered from the defendant's computer included videos depicting prepubescent minors who had not attained 12 years of age.  At that time, the defendant spoke to

agents and admitted that he utilized the internet messaging application Kik to send and receive child pornography but that he would delete the material after viewing it.

On November 19, 2020, the Court sentenced defendant to 78 months' incarceration followed by 15 years of Supervised release.   Defendant also was assessed the special assessment under the Justice for Victims of Trafficking Act.   The Court's sentence represented a 19-month downward variance from the bottom end of the advisory guideline range.   Doc. No. 58; *see* Presentence Investigation Report ("PSIR") at ¶ 54.

On September 9, 2021, defendant, *pro se*, filed the instant motion for compassionate release.   Doc. No. 64.   The Court then appointed counsel, Mr. Chris Randy Eyster, to represent defendant with regard to his motion.   Doc. Nos. 64 & 65.   On September 16, 2021, the Court entered a text order stating that defense counsel informed the Court that a counseled motion would not be filed on behalf of defendant; therefore, the government's response was ordered.

## **ARGUMENT**

### I.      **Defendant's Motion Appears to be Ripe for Consideration.**

Section 3582(c)(1)(A)—as amended by the First Step Act of 2018—allows a court to reduce a term of imprisonment based on "extraordinary and compelling" circumstances, but only

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier[.]

*Id.* § 3582(c)(1)(A) (emphasis added).   As the Third Circuit has noted, "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" during the ongoing COVID-19 pandemic.   *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

3

Defendant's *pro se* motion indicates that he filed a request for compassionate release but received no response from the Warden of FCI-Elkton, where Defendant is currently incarcerated. BOP reports that Defendant submitted the same motion filed with the Court with a "Certificate of Service" date of July 26, 2021.   *See* Doc. No. 63 at 30.   .   Although the defendant does not state, and the record does not indicate, whether this was the proper procedure for submitting a compassionate release request to the Warden of FCI-Elkston, *see* 28 C.F.R. § 571.61 ("A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden."),the Acting Warden of FCI-Elkton responded by letter dated September 10, 2021, denying Defendant's request.   *See* Gov. Exhibit A, attached hereto.   It is unclear whether Defendant appealed this decision.   Nevertheless, because Defendant has waited "30 days from the receipt of such a request by the warden," his motion is ripe, and this Court may consider it.   18 U.S.C. § 3582(c)(1)(A).[1]

## II.   <u>The Defendant's Motion Under § 3582(c)(1)(A) Fails on the Merits.</u>

Aside from exhaustion, a district court may only grant relief under § 3582(c)(1)(A) "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," it "determines that . . . (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C.

---

[1]   Some courts have concluded that "an inmate must fully exhaust his administrative remedies unless his or her warden *does not respond to the inmate's request* within 30 days."   *United States v. Early*, Crim. No. 19-92, 2020 WL 2572276, at *3 (W.D. Pa. May 21, 2020) (emphasis added); *United States v. Solomon*, Crim. Nos. 05-350 & 05-385, 2020 WL 2768897, at *3 (W.D. Pa. May 28, 2020).   After further consideration, the government submits that § 3582(c)(1)(A) allows the defendant to file a motion after "the lapse of 30 days from the receipt of such a request by the warden," regardless of whether the warden has responded within those 30 days or not, and regardless of whether or not the defendant files an appeal within BOP.   *See, e.g.*, *United States v. Gardner*, No. 13-CR-0035, 2020 WL 1673315, at *1 (D. Minn. Apr. 6, 2020).

The government further submits that the exhaustion requirement of § 3582(c)(1)(A) cannot be excused or waived. *See Bowles v. Russell*, 551 U.S. 205, 212-13 (2007); *United States v. Higgs*, 504 F.3d 456, 464 (3d Cir. 2007); *cf. Raia*, 954 F.3d at 597.   As the Third Circuit has held, "section 3582 sets forth a *statutory* basis for limiting the district courts' jurisdiction," and therefore any "timing requirement" set forth in that section, or a related Rule of Criminal Procedure, is "jurisdictional."   *United States v. Higgs*, 504 F.3d 456, 464 (3d Cir. 2007).

§ 3582(c)(1)(A).   Because the defendant cannot satisfy all of the remaining requirements under the compassionate release statute, his motion fails on the merits.

A.   **The Defendant Cannot Establish an "Extraordinary and Compelling Reason[]" for Relief Under § 3582(c)(1)(A)**

Pursuant to the Sentencing Reform Act of 1984, Congress authorized the Sentencing Commission to define "extraordinary and compelling reasons" as it is used in § 3582(c)(1)(A). *See* Pub. L. 98-473, § 217(a), 98 Stat. 1837, 2019 (enacting 28 U.S.C. § 994).   Specifically, 28 U.S.C. § 994(t) provides that "[t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."   *Id.*

The Commission has fulfilled its statutory mandate through the policy statement contained in U.S.S.G. § 1B1.13 and its application notes.[2]   Application note 1 to § 1B1.13 sets forth "extraordinary and compelling reasons" that may justify release under § 3582(c)(1)(A), including specific circumstances contained in four subdivisions.   For example, subdivision (A)—titled Medical Condition of the Defendant—applies, in part, if the "defendant is—(I) suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is

---

[2] Recently, the Third Circuit clarified that § 1B1.13 is not currently binding because the Guideline and its commentary predate the compassionate-release changes effected by the First Step Act and have not subsequently been amended or re-promulgated.   *United States v. Andrews*, -- F.4th --, 2021 WL 3852617, at *4 (3d Cir. 2021, Aug. 30, 2021).   Nevertheless, the court confirmed that the current version of the Guideline may be used as a guide in evaluating motions filed pursuant to § 3582, concluding that "it still sheds light on the meaning of extraordinary and compelling reasons. . . . Because Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,' it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute."   *Id.*

not expected to recover." U.S.S.G. § 1B1.13 app. note 1. A defendant must have a *current* illness, such as a "serious physical or medical condition," to meet these criteria.

Subdivision (B) covers certain inmates who experience a serious deterioration in health due to age,[3] while subdivision (C) extends to "family circumstances" such as the incapacitation of a defendant's spouse. *Id.* Finally, subdivision (D)—"Other Reasons"—vests with the Director of BOP the discretion to determine the existence of an extraordinary and compelling reason for a reduction "other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* (emphasis added). As contemplated by subdivision (D), BOP has issued a Program Statement describing reasons that may support compassionate release. *See* Bureau of Prisons, Program Statement 5050.50 (requiring, among other things, that the defendant have a current medical condition, such as a "terminal, incurable disease," or "an incurable, progressive illness" that leaves him "[c]ompletely disabled" or "[c]apable of only limited self-care").

Defendant alleges that he suffers from hypertension, psoriasis, and a hernia repair which place him at a heightened risk of severe illness or death should he contract COVID-19. Doc. No. 63 at 10-13.

    **i.**     **The Mere Existence of COVID-19 Does Not Necessitate Release.**

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not

---

[3] This provision is not applicable to the defendant because, by its terms, it only applies if the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; *and* (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 app. n.1(B) (emphasis added). The defendant has provided no evidence to demonstrate the required "serious deterioration" of his health "because of the aging process," and in any event he has not yet served 75% of his sentence.

generalized threats to the entire population.   The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."   *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen, J.) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

The government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease.   *See United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting

*United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (Ranjan, J.)).   That is not the case here.

The CDC's list of risk factors was most recently updated on March 29, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 7, 2021).   It reports a list of conditions that "can make you more likely to get severely ill from COVID-19."   An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[4]

> **ii.    Even if Defendant's Medical Conditions Present a Risk Factor, He Does Not Present "Extraordinary and Compelling Reasons" for Release Because He Has Been Vaccinated.**
>
> > **1.   Defendant's only risk factor—hypertension.**

---

[4]   Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the government maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g.*, *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (Cogburn, J.); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (Slomsky, J.) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last visited April 22, 2021). The government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors, updated on March 29, 2021, states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."

Here, of the ailments alleged, the only risk factor that the defendant presents is hypertension.  The CDC has consistently indicated that there is insufficient evidence to conclude that hypertension places a person at a greater risk of a severe outcome from COVID-19. The CDC previously stated that hypertension "might" present a risk, and more recently stated that it "possibly" can make a person more prone to severe illness, as distinct from many other conditions that the CDC states can make severe illness more likely. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Oct. 7, 2021).

Accordingly, many courts, with endorsement from courts of appeals, have denied relief when hypertension is the only potential risk factor presented.[5]  In addition, courts have maintained this view following the CDC's March 29, 2021, revision of its list of risk factors, which singled out hypertension as only "possibly" presenting a risk. *See, e.g.*, *United States v. Jackson*, 847 F.

---

[5] *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) ("commonplace" conditions of hypertension and hyperlipidemia are not extraordinary); *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's conclusion that defendant's hypertension was not extraordinary and compelling); *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (same)g; *United States v. Nesbitt*, 2020 WL 3412577, at *4 (E.D. Pa. June 22, 2020) (Bartle, J.) (ordinary hypertension does not justify release); *United States v. Daniels*, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (Schiller, J.) (same); *United States v. Tartaglione*, 2020 WL 3969778, at *6 (E.D. Pa. July 14, 2020) (Slomsky, J.) (hypertension and hyperthyroidism, if presented by 64-year-old, "are not the kind of conditions that place her at a uniquely high risk of grave illness or death if infected by COVID-19."); *United States v. Martines*, 2021 WL 427285, at *2 (E.D. Pa. Feb. 8, 2021) (Kearney, J.) (hypertension of 67-year-old is not a sufficient risk factor); *United States v. Williams*, 2020 WL 4756738, at *5 (E.D. Pa. Aug. 17, 2020) (Pratter, J.) ("Although the CDC recognizes that having certain other conditions, including hypertension or high blood pressure 'might be at an increased risk,' hypertension is not considered high risk at this time."); *United States v. Ackerman*, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (Marston, J.) ("Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted.") (citing cases); *United States v. Syed*, 2020 WL 5995053, at *5 (M.D. Tenn. Oct. 9, 2020) (Richardson, J.) (even after six months the CDC continues to state that hypertension only "might" present a risk; the court therefore "concludes that Defendant's hypertension does not constitute extraordinary and compelling reasons for his release."); *United States v. Thomas*, 2020 WL 3895781, at *3 (W.D. Va. July 10, 2020) (Urbanski, J.) ("During the pandemic, courts in this district and across the country have released individuals suffering from hypertension, but only when these individuals also suffered from other underlying medical conditions."); *United States v. Colbert*, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (Cleland, J.) ("Hypertension, a condition that affects about 46% of the U.S. adult population, high cholesterol, and having had prostate cancer in the past are not 'extraordinary and compelling' conditions.").

App'x 792, 796 (11th Cir. 2021) (not precedential) (as the risk of severe disease for one suffering from hypertension "is only potentially higher," the district court did not abuse its discretion in denying relief); *United States v. Tello*, 2021 WL 2005792, at *5 (E.D. Tex. May 18, 2021) (Crone, J.) (obesity (30.3) and hypertension are not "extraordinary" circumstances, notwithstanding the CDC's classification; "according to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight. In addition, 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control. Due to their prevalence, obesity and hypertension cannot be deemed 'extraordinary' in order to merit compassionate release."); *United States v. Robinson*, 2021 WL 1318027, at *8 (D.D.C. Apr. 8, 2021) (Moss, J.); *United States v. Bell*, 2021 WL 1839523, at *3 (E.D. Pa. May 7, 2021) (Pratter, J.) (hypertension and obesity (BMI of 33) in isolation are not sufficient to warrant release); *United States v. Garcia*, 2021 WL 2269693, at *4 (E.D. Pa. June 3, 2021) (Jones, J.) (hypertension is not a definite risk); *United States v. Phillips*, 2021 WL 2346101 (E.D. Pa. June 8, 2021) (Joyner, J.) (obesity (31.7) and hypertension of 50-year-old man do not present extraordinary circumstances); *United States v. Carlson*, 2021 WL 1820239, at *5 (D.S.D. May 6, 2021) (Viken, J.) (conditions of hypertension and obesity (BMI of 31.1) of 61-year-old are not extraordinary); *United States v. French*, 2021 WL 1316706, at *5-6 (M.D. Tenn. Apr. 8, 2021) (Richardson, J.); *United States v. Campbell*, 2021 WL 1733395, at *3 (E.D. Wis. May 3, 2021) (Stadtmueller, J.) (hypertension is not an extraordinary and compelling circumstance).

### 2.  Defendant has been vaccinated.

Moreover, defendant's hypertension no longer presents an "extraordinary and compelling" because he has been vaccinated.  On March 3, 2021, Defendant received his first shot of the

10

Moderna Vaccine; on March 31, 2021, he received his second dose of the vaccine.   *See* Doc. No. 63-1 (Medical Records provided by Defendant).

BOP worked with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP received the COVID-19 vaccines as they became available, and then offered the vaccines to all willing staff members and inmates, beginning first with staff members (who present a more likely vector for COVID-19 transmission into an institution), and then offering the vaccines to inmates in order of priority of need in accordance with CDC guidelines. As a court observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

As of this writing, through an intensive effort over the past months, BOP has offered a vaccine to every inmate in BOP-managed institutions.   Going forward, BOP will continue to offer vaccines to newly arrived inmates, and to those inmates who initially declined a vaccine if they change their minds, as expeditiously as possible as supplies are available.

At FCI-Elkton, where the defendant is held, BOP has fully vaccinated 214 staff members, and 1234 inmates (which is 81% of the current inmate population, and does not account for those additional inmates who declined vaccination).

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf.   The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

11

As a result, the defendant's motion for compassionate release should be denied.   As the government has explained, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."   U.S.S.G. § 1B1.13 app. note 1(A)(ii). The government, during the pandemic, has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist, as the available vaccines permit effective self-care against severe illness or death that may be caused by the coronavirus. The CDC has consistently and strongly advised that every person 12 years of age and older receive one of the vaccines that has received emergency use authorization from the FDA. The CDC states that the vaccines are "safe and effective," and "[g]etting vaccinated prevents severe illness, hospitalizations, and death." https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last accessed Oct. 7, 2021).

The vaccines were the subject of extensive clinical trials before authorization, which revealed high effectiveness in preventing infection, and particularly in preventing severe illness or death. The data thus far show remarkable success in the real world. The CDC reports that as of August 2, 2021, there are more than 164 million Americans who have been fully vaccinated. Within that group, only approximately 5,000 hospitalizations from symptomatic "breakthrough infections" have been reported, and only approximately 1,200 deaths (0.00073%). https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html    (accessed

Aug. 12, 2021). These data suggest a level of risk from COVID-19 of a vaccinated person far less than that faced by prisoners and all other persons from myriad other ailments and hazards of daily life.

There has been widespread recent reporting that the Delta variant of COVID-19 is now the most prevalent variant causing new infections in the United States, posing a significant risk to unvaccinated persons. The CDC reports, however, that the approved vaccines are proving highly effective against the Delta variant, stating, "FDA-authorized COVID-19 vaccines protect against Delta and other known variants." The CDC adds: "Infections happen in only a small proportion of people who are fully vaccinated, even with the Delta variant. Some breakthrough infections are expected, but remain rare. . . . All vaccines are particularly effective against severe illness, hospitalization and death."[6]

Accordingly, once a vaccine is available to an inmate, compassionate release is not warranted based on the threat of COVID-19 alone. *See United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions [based on COVID-19] generally lack merit.").

Courts have agreed with this conclusion almost unanimously.[7]  Courts routinely deny relief to an inmate who has been vaccinated. *United States v. Wills*, 2021 WL 2179256, at *1 (D. Or.

---

[6]   https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Ftransmission%2Fvariant html (accessed Aug. 12, 2021); *see also* https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (accessed Aug. 12, 2021) ("Vaccines in the US are highly effective, including against the Delta variant.").

[7]   The citations provided in this memorandum, of decisions denying motions of defendants who are vaccinated or declined a vaccine, represent just a fraction of the countless consistent decisions in recent months on

May 27, 2021) (Brown, J.) (citing many cases); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) (Underhill, J.) ("Given current understanding, the Pfizer vaccine is so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule—and certainly not extraordinary and compelling."); *United States v. Otero-Montalvo*, 2021 WL 1945764, at *3 (E.D. Pa. May 14, 2021) (Schmehl, J.) (41-year-old defendant presents asthma and obesity, but has been vaccinated; the court dismisses his complaints regarding prison management, stating, "The BOP and FCI Fort Dix administering vaccinations shows that they are taking the appropriate precautions to the COVID-19 pandemic and are safeguarding inmates"); *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) (Gallagher, J.) ("Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus. On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity from the category of risk constituting an 'extraordinary and compelling reason' to consider compassionate release."); *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) (Kenney, J.) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.") (citing cases); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D.

---

these points. The government will provide additional citations to the Court at its direction.

Va. May 12, 2021) (Jackson, J.) (relief is denied notwithstanding obesity, chronic kidney disease, and hypertension, in light of vaccination and CDC information regarding efficacy; "With this information from the CDC and knowing that Petitioner is fully vaccinated and in an environment in which many of the inmates within his facility are also vaccinated (and continuing to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration").

Likewise, courts routinely deny compassionate release to an inmate who declined a vaccination. The Seventh Circuit stated:

> [A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release. The risk is self-incurred. . . . The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective . . . . A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

*United States v. Broadfield*, -- F.4th --, 2021 WL 3076863 (7th Cir. July 21, 2021). *See also, e.g.*, *United States v. Downer*, 2021 WL 2401236, at *2 (D. Md. June 11, 2021) (Gallagher, J.) ("Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release."); *United States v. Sawyers*, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) (Lew, J.) ("The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion."); *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (Teilborg, J.) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of

15

a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release"); *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) (Mihm, J.) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk."); *United States v. Ortiz*, 2021 WL 1422816, at *3 & *5 n.6 (E.D. Pa. Apr. 15, 2021) (Leeson, J.) ("Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (Beetlestone, J.) (the court denied relief even though the defendant was 58 years old and suffered from, among other conditions, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, stating that "the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release."); *United States v. Cooper*, 2021 WL 1629258, at *7 (E.D. Pa. Apr. 27, 2021) (Joyner, J.) ("While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a

consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered."); *United States v. Baptiste-Harris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021) (Torreson, J.) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release. . . . He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine.").

It is possible that the scientific consensus may shift if, for example, the efficacy of the vaccines changes over time, or variants emerge that bypass the vaccines. The government will address those issues as they arise. But at present, absent such a "shift in the scientific consensus, vaccination against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.). *See also United States v. Hill*, 2021 WL 1807285, at *2 (N.D. Ohio May 5, 2021) (Polster, J.) ("[I]f such scientific evidence later materializes, nothing will prevent Hill from filing another motion for compassionate release."); *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) ("Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation.").[8]

---

[8]   As noted, the vaccines are proving effective against the now-prevalent Delta variant, and therefore courts continue to deny compassionate release motions based on the risk from COVID-19. *See, e.g.*, *United States v. Jackson*, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021) (Goldsmith, J.) ("While it is true that new variants—particularly the Delta variant—are on the rise, the CDC states that '[c]urrent data suggest that COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States.' Thus, Jackson could have mitigated his fear of COVID-19 variants by getting vaccinated. Accordingly, the Court will not grant Jackson release based on his alleged fear of variants."); *United States v. Long*, 2021 WL 3185600, at *5 (D.D.C. July 28, 2021) (Friedman, J.) (citing sources reporting the effectiveness of the Pfizer vaccine against the Delta variant, and

In sum, absent a significant change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should bring to an end the unprecedented period in which compassionate release has been available based on the threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("[A] defendant's medical condition must be one of substantial severity and irremediability."). At present, the defendant does not present any such condition.[9]

### B.   BOP's Has Taken Extensive and Appropriate Precautions in Response to the COVID-19 Pandemic and General Concerns About Virus Transmission Do Not Constitute   "Extraordinary and Compelling" Reasons.

Defendant's motion fails to acknowledge the protective measures that the BOP is taking to prevent transmission of COVID-19, including vaccination efforts.

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years, and

---

stating, "Because Mr. Long has received both doses of the Pfizer-BioNTech COVID-19 vaccine, the presence of the delta variant does not make his circumstances extraordinary and compelling."); *United States v. Ogunlana*, 2021 WL 3129327, at *2 (D. Md. July 23, 2021) (Gallagher, J.) (denying relief to defendant who declined vaccine; "The scientific evidence suggests that the available vaccines provide significant protection against complications from COVID-19 infection, even with the emergence and current prevalence of the 'Delta variant.'"); *United States v. Rocha-Carlon*, 2021 WL 3115229, at *6-7 (E.D. Cal. July 22, 2021) (Drozd, J.) (defendant's obesity does not present an extraordinary factor where he has been vaccinated; the vaccines are proving effective, and this assessment is not changed by emergence of the Delta variant).

[9]   The government further recognizes that an individual who contracts COVID-19, even if protected against severe illness, may later suffer from "long-haul" symptoms. This is not a basis for compassionate release at this time. If an inmate who previously suffered from COVID-19 later develops "long-haul" symptoms, his condition may be assessed at that time.

refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. We therefore focus primarily on considerations specific to the defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[10] This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their

---

[10]    This Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Aguibi*, -- F. App'x --, 2021 WL 2623415, n.2 (3d Cir. June 25, 2021) (not precedential; per curiam) ("To the extent that Aguibi requested a transition to home confinement, the Bureau of Prisons has the sole authority to place a prisoner in home confinement."); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021); *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population is now more than 10% less than it was at the outset of the pandemic, standing at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful, now abetted by widespread vaccination (discussed below). It is notable that the rate of deaths in federal prisons has been comparable to that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.[11] Further, the incidence of positive cases in all BOP institutions has been sharply declining for months, with nearly all institutions currently reporting no cases or case tallies in the single digits.

Specifically as it relates to the defendant, BOP's aggressive efforts have extended to FCI Elkton. That institution currently houses 1,523 total inmates. https://www.bop.gov/locations/institutions/elk/ (last accessed Oct. 7, 2021).   At present, there are 0 inmates who are reported positive, and are isolated while they are treated/recover. https://www.bop.gov/coronavirus/;jsessionid=7B3CEAD7EBC3C2526CB633DBFA04002A (last accessed Oct. 7, 2021).   There are also 758 current inmates who previously tested positive

---

[11]   While there have been 242 inmate deaths related to COVID-19 at BOP institutions (which at the outset of the pandemic held over 157,000 inmates), there have been over 615,000 deaths in the general population. Both figures represent tragedies, but the defendant has not shown that the toll in BOP facilities is materially worse than in the rest of the country.

and have recovered.   *Id.*   There have been 9 COVID-related inmate deaths at this institution. The latest statistics are available at www.bop.gov/coronavirus.

C.     **Defendant's parents' medical conditions do not present an "extraordinary and compelling reason".**

Defendant further requests a reduction in his sentence to care for his parents who have numerous health issues (Doc. No. 63 at 8).   While the government is sympathetic to the defendant's desire to assist his parents, courts have routinely concluded that care of elderly parents does not justify relief under § 3582.   The Guidelines commentary explains that the only family circumstances that may justify a reduction of a defendant's prison term is either "[t]he death or incapacitation of the caregiver of the defendant's *minor child or minor children*" or "[t]he incapacitation of the *defendant's spouse or registered partner* when the defendant would be the only available caregiver for the spouse or registered partner."   U.S.S.G. § 1B1.13 app. note 1(C) (emphasis added).   Under this policy statement, "[c]are of parents is not a qualifying basis for early release."   *See, e.g.*, *United States v. Henry*, 2020 WL 3791849, at *4 (E.D.N.Y. July 6, 2020); *see also United States v. Goldberg*, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) ("[T]he family circumstances that would amount to an extraordinary and compelling reason are strictly circumscribed" and "do not encompass providing care to elderly parents").   "Many, if not all inmates, have aging and sick parents.   Such circumstance is not extraordinary."   *United States v. Everett*, 2021 WL 322182, at *1 (W.D. Pa. Feb. 1, 2021) (quoting *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019)); *see also United States v. Gaskin*, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) (noting that "the desire to care for elderly parents" does not "qualify as extraordinary").

Even if the Court were to consider the defendant's care for his parents as a qualifying "family circumstance," he has not established that he is the only available potential caregiver. *See United States v. Cruz-Rivera*, 2020 WL 5993352, at *5 (E.D. Pa. Oct. 9, 2020) ("District courts routinely deny motions for compassionate release when the defendant cannot show that they would be the only available caregiver[.]").   As the Court is aware, the defendant's sibling also lives in the area, *see* PSIR at ¶ 43, and it is unclear why his sibling cannot assist their parents, even if that responsibility previously fell to the Defendant.

For all of the foregoing reasons, compassionate release is not warranted here.   Further, even if the defendant were at elevated medical risk, relief should be denied. This Court must then consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the community. *See United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (per curiam) (not precedential) (summarily affirming the denial of compassionate release, in a case in which the defendant presented medical risk, upon holding that the district court did not abuse its discretion in considering the nature of the offense, the defendant's history, and the status of the virus at the facility); *United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (per curiam) (not precedential) (granting motion for summary affirmance of denial of compassionate release, as the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the 3553(a) factors, including the substantial time remaining to be served on the sentence and the defendant's criminal history and institutional infractions).

III.   **Even if Defendant has Shown "Extraordinary and Compelling Reasons," Compassionate Release Is Not Appropriate Under the § 3553(a) Factors and § 1B1.13.**

Even if "an inmate has established an extraordinary and compelling reason," assessment

22

of the § 3553(a) factors will often result in the conclusion that compassionate release should not be granted, except in cases in which the inmate clearly does not present a danger of recidivism or harm to the community and in addition either (a) has a grave condition that would justify compassionate release in ordinary times, or (b) has a relatively short period of time left to serve on the sentence.

Here, even if Defendant has shown "extraordinary and compelling reasons" under the Sentencing Commission's definition, Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.   This Court must find under § 1B1.13 that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and must also consider the § 3553(a) factors in determining whether a reduction is appropriate.   18 U.S.C. § 3582(c)(1)(A).   Here, § 1B1.13 and the § 3553(a) factors continue to support the sentence this Court originally imposed, and the defendant's motion should be denied.

The factors to be considered include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" (4) the sentencing guidelines; and (5) "the need

to provide restitution to any victims of the offense."   18 U.S.C. § 3553(a).

As this Court knows, defendant committed a very serious child sexual exploitation crime. While defendant did not physically harm a child in this case, as a consumer of child sexual abuse material he contributed to the harm to the victims who were the subject of the child sexual abuse material he possessed and viewed.   Consumers of child pornography, whether they are involved in production, contribute to the cycle of abuse and are in part responsible for the psychological and physical harm of the children used to produce the images.   *United States v. Yeaple*, 605 F. Supp. 85, 86 (M.D. Pa. 1985); *see also*, *United States v. Ferber*, 458 U.S. 747, 759 (1982).   As the Court will recall, defendant's crime was not merely passive.   He admitted to law enforcement that he used Kik Messenger, a messaging application known for its anonymity,[12] to receive and send child sexual abuse material, including links to such material.   In so doing, Mr. Laforte piggybacked on and encouraged the crimes of others in a way that directly contributed to the victimization of the children depicted.

Moreover, the defendant's case before this Court was not defendant's first instance of criminal contact with a minor.   *See* PSIR at ¶ 39.   As part of his sentence for the 2001 case, defendant was prohibited from driving a school bus.   Given defendant's escalating criminal behavior (i.e., the possession of child sexual abuse material in this case), it is particularly concerning that, at the time of the instant criminal conduct, Mr. Laforte was employed as a bus driver with the Monessen School District, and had so been employed for 34 years, as he reported to law enforcement during execution of the search warrant at his residence. Defendant's criminal

---

[12] SHERYL Gay Stolberg and Richard Perez-Pena, *Wildly Popular App Kik Offers Teenagers, and Predators, Anonymity*, N.Y. TIMES, Feb. 5, 2016.

history, coupled with his criminal conduct in this case, demonstrate a sexual interest in prepubescent children, making him a danger to the community.   This danger still exists.

The law is clear that child pornography crimes warrant stringent sentences and this Court should not reduce defendant's sentence—there is no reason to do so and such action would diminish the seriousness of the offense as well as its deterrent effect on both the defendant and other while may consider similar offenses in the future.

In sum, this Court already imposed a punishment reflective of the seriousness of defendant's conduct and his potential for future crime.   Defendant's sentence was wholly appropriate given the nature and circumstances of defendant's offense and the seriousness of his offense and should not be altered in order to promote respect for the law and to provide just punishment.   18 U.S.C. § 3553(a)(1), (a)(2), & (a)(2)(A).   Defendant already received the benefit of a below-Guidelines sentence, and application of § 3553(a) factors, as well as the policy statement contained at § 1B1.12 of the Sentencing Guidelines, make clear that defendant's sentenced should not be reduced under § 3582(c)(1)(A).   To date, the amount of time that defendant has spent in custody has not fulfilled the original purpose of sentencing such that any additional time in custody would now be greater than necessary to fulfill the purpose of sentencing. Defendant committed a serious offense that required a serious sentence, as originally imposed by this Court, and it should be fully completed.

In sum, upon consideration of all pertinent factors, the motion for compassionate release should be denied.

Respectfully submitted,

STEPHEN R. KAUFMAN
Assistant United States Attorney

s/ Heidi M. Grogan
HEIDI M. GROGAN
Assistant United States Attorney
PA ID No. 203184